ZOE M. DUDEMAINE, joined by her husband nad next friend, EUGENE A. DUDEMAINE, v. ROY SHAW and MARY SHAW, his wife, J. W. MOSTELLER, AMERICAN OIL COMPANY, a corporation, CECIL MARTIN, HARRY WHALTON, FRED STRICKLAND and WILLIAN E. STRICKLAND, his wife, FRED G. TEGDER, S. E. HUTCHINS.

16 So. (2nd) 114                     June Term, 1943
January 4, 1944                        Division B

*E. W.* and *R. C. Davis,* for appellants.

*Claude L. Gray,* for American Oil Company and Fred Tegder, *Warren B. Parks,* for S. E. Hutchins, *Addison L. Williams* for Roy Shaw and Mary Shaw, *J. B. Rodgers, Jr.,* for Fred Strickland and Lillian Strickland and *A. T. McKay,* for J. W. Mosteller, appellees.

BROWN, J.:

This is an appeal from an order granting the motions filed by the several defendants in the court below to dismiss plaintiff's amended bill of complaint. Plaintiff in the court below, joined by her husband and next friend, filed her bill on April 20, 1939, to foreclose a certain mortgage which had been executed on December 19, 1936, by two of the defendants, Roy Shaw and Mary Shaw to the Glen Falls Insurance Company in the sum of $2850.00, which mortgage covered a certain lot in Orlando, Florida. The bill alleges that on April 19, 1939, which was one day before the bill was filed, the said Insurance Company for valuable consideration assigned said mortgage to plaintiff Zoe M. Dudemaine, together with the note which the mortgage secured, with interest thereon *from April 19, 1939,* the date of the assignment. The mortgage was payable in installments of $35.00 per month and the bill alleged that the mortgage installments had been paid through *February 19, 1939,* and that the mortgagors had been in default since that date. The bill further alleges that pursuant to the provisions contained in the note and mortgage, the plaintiff had exercised her option of declaring the entire unpaid balance to be immediately due and payable, and that

the plaintiff, subsequent to default in payment of said note and *after a default for a period of five days,* provided for in the instrument, had placed said note and mortgage in the hands of her attorney for foreclosure. As the suit was filed the next day after the alleged assignment of April 19, 1939, the question might have been raised as to whether or not the bill for foreclosure was prematurely filed. However, this question was not raised by any of the defendants.

The bill alleged that one of the defendants, the American Oil Company, had or claimed an interest in the mortgaged property, the exact nature of which was unknown to plaintiff, but that such interest, if it existed, was inferior and subject to the lien of the mortgage.

On the same day that the bill was filed plaintiff filed notice of Lis Pendens.

On June 3, 1939, American Oil Company filed its answer in which it stated that it was without knowledge of most the matters and things alleged in the bill and demanded strict proof thereof, but admitted that it had an interest in the mortgaged property which interest was not inferior to the lien of the plaintiff; that at the time of the execution and delivery of the mortgage and note referred to in the first two paragraphs of plaintiff's bill, defendant was holding said property by virtue of a five-year lease dated April 3, 1936, which lease had been duly recorded and that it had been in actual possession of such property ever since, and that whatever rights the mortgagee or its assignee may have by virtue of the mortgage was therefore inferior to the rights of the defendants and asked that in any decree that might be rendered, its rights by virtue of its lease be preserved.

It appears that none of the other defendants filed any response to the bill and no further pleadings of any nature were filed in the court until December 21, 1942, more than three years later, when on motion of plaintiff, the court made an order permitting the plaintiffs to file an amended bill of complaint and allowing the defendant American Oil Company the right to plead thereto within a designated time.

Contention is made that by reason of the lapse of more than three years in which the case lay dormant it should

under the statute be considered as having been abated, but no motion was made to dismiss it during that period, and the court had authority to grant the motion to file an amended bill, or an amendment to the bill, if it saw fit, and the court did see fit to make the order above referred to. A mere reading of the statute, which now appears as Section 45.19 of Florida Statutes, 1941, Chapter 14554, Acts of 1929, will demonstrate the correctness of this holding. See Scarlett v. Frederick, 147 Fla. 407, 3 So. (2nd) 165, wherein we held that the running of the three year period without action showing that cause was being prosecuted did not deprive the court of jurisdiction, as the statute requires an order of dismissal by the court and then the retention of jurisdiction for six months, within which, on motion, for good cause shown, the court may order re-instatement.

Pursuant to this order, the plaintiff, on December 22, 1942, amended her original bill by adding Paragraph 7a.

The purpose of this amendment was to have the court declare null and void a certain tax deed issued to one S. E. Hutchins subsequent to the institution of this suit. The amendment to the bill alleges that after the institution of this foreclosure suit, and the recording of Lis Pendens therein, one Fred Strickland procured the execution of a deed by Roy Shaw and Mary Shaw, the mortgagors, conveying to him the property described in the mortgage, and had the deed recorded; that Strickland purchased the property for the use and benefit of the defendant American Oil Company and held the title for said Company which was the true owner of the same. It is further alleged that on June 30, 1941, S. E. Hutchins purchased from the Atlantic Municipal Corporation, a purchaser of tax certificates, a tax certificate on said property and on August 12, 1942, applied for a tax deed thereon, which was issued to him on September 7, 1942, but that the clerk of the court failed to give any notice of the application for said deed to plaintiff, or her well known attorneys in the foreclosure suit, although he did give notice to plaintiff's assignor, the original mortgagee, the Glen Falls Insurance Company. It is alleged that the circuit court clerk had notice by the records in his office that plaintiff was the

owner of the mortgage and that certain named attorneys were her solicitors in the foreclosure proceedings, and that the clerk knew or should have known, by reason of the records in his office, that the names of the well known Orlando attorneys of plaintiff were shown by the bill of complaint, and likewise should have known that the named attorneys were representing her in the foreclosure, as the records of his office showed it; but that plaintiff knew nothing of the application, and received no notice thereof, and that had she had such notice she would have paid the delinquent taxes, and alleges that she now tenders the amount of said taxes and any other taxes that may be due on the property into the registry of the court. But this transcript of record shows that the bill in this foreclosure proceeding did not give plaintiff's address. It merely stated that she and her co-plaintiff husband were "both of Palm Beach County, Florida." Furthermore, the assignment of the mortgage from the Glen Falls Insurance Company to these plaintiffs was not recorded.

Appellants contend that Section 194.14, et seq., Fla. Statutes 1941, are not applicable here, as the tax certificates here involved issued prior to the year 1941, and that this case is governed by Section 999 (139), C.G.L. Perm. Suppl., being Section 4, Chapter 17457 Acts of 1935, which provides that in addition to the publication of notice, the clerk shall mail a copy of such notice to the owner of the property, if the address of the owner be known to the clerk, and also a copy of such notice to the holder of each mortgage which appears of record against said property, if the address of such mortgage holder be known to the clerk, and it further provides that if *the owner's address* is unknown to the clerk, the latter shall execute and attach to the proof of publication a certificate to the effect that the address of the owner is unknown to him. (The later statute, said Section 194.14 Fla. Statutes 1941, requires the mortgage holder to furnish the clerk his address on or before May 1st of each year.) But even if we accept appellant's contention that this 1935 statute is controlling, the fact remains that the record holder of this mortgage was the Glen Falls Insurance Company, the

assignment to the plaintiff not having been recorded, and it was not incumbent upon the clerk to search through all the cases pending in the circuit court of Orange County to ascertain if this particular piece of property was involved in any foreclosure litigation or any other kind of litigation, and whether or not such court record showed the name and address of the holder of the mortgage. If perchance the clerk had remembered that Mrs. Dudemaine had filed a bill to foreclose a mortgage back in April, 1939, it is hardly possible that he could have remembered the particular property described in the mortgage sought to be foreclosed. Indeed, it seems that the plaintiff herself forgot all about this suit for over three years. If the clerks of the circuit courts of Florida, especially in the larger counties, when applications for tax deeds are filed, were required to search their court records to find the addresses of parties who might have filed some suit or suits involving the particular property covered by a tax certificate, they would have little time for the performance of any other duties. The law does not impose any such impossible task upon the clerks of our circuit courts. Counsel for appellants cite the case of Jernigan v. Harrison, 136 Fla. 320, 186 So. 511, but neither that case nor the case of Beaty v. Inlet Beach Inc. 9 So. (2nd) 735, 151 Fla. 495, is in point here. The facts in those cases are entirely different from those in the instant case. We might add that even if the clerk had happened to recall this particular foreclosure suit and had gone back to read the bill of foreclosure in this case, he could not have obtained therefrom Mrs. Dudemaine's address or that of her husband. But it is not alleged that he remembered this suit, and as we have said, the law did not require him to make this kind of examination.

So the tax deed is not shown to be void or voidable on account of any failure on the part of the clerk to comply with the statutes; and of course if the tax deed was and is entirely valid, plaintiff's mortgage was wiped out.

The amendment to the bill of complaint further alleges that when Strickland, an employee of the Oil Company, procured the deed from the mortgagors and put the same on record, he purchased the same for the use and benefit of the

American Oil Company and held the title for said Company, which became the true owner of the property, and that Strickland, when he so purchased the property, was charged with notice of plaintiff's ownership of the mortgage by reason of the Lis pendens on file. Even if all that be true, the effect would merely be that Strickland purchased the property for the use and benefit of the Oil Company, subject to the mortgage owned by plaintiff. It would not affect the tax deed.

However, the amended bill goes further and alleges in general terms that:

"Your oratrix further charges that the said S. E. Hutchins, while he is the holder of and appears as the grantee in said Tax Deed, is not the true owner of the lands herein mentioned, but alleges the truth to be that he holds the same for the defendant, American Oil Company, and that the said American Oil Company is the true owner thereof, and with the full knowledge of the interest of your oratrix, and her address, procured said Hutchins to purchase said Tax Deed for the purpose of defeating this foreclosure, and thereby defrauding this complainant."

It will be noted that the amendment to the bill does not allege that the beneficial ownership of the American Oil Company (whose lease expired in April 1941) was evidenced by any instrument in writing, nor does it allege that the Oil Company paid for the purchase of the property by Strickland, the alleged owner of the equity of redemption, or that Strickland paid for it with the Oil Company's money; nor does it allege that when Hutchins purchased the 1940 tax certificate back in June of 1941, he did so with money furnished by the Oil Company.

Appellant's theory is that the American Oil Company was the real owner of the property, and that being the owner, it was its duty to pay the taxes, and that when the Oil Company "procured" Hutchins to purchase the tax deed, it amounted merely to a payment of the taxes. Even if this theory be sound, there are no allegations of specific facts sufficient to sustain the general conclusions alleged. This is pointed out clearly in the defendant Oil Company's motion to dismiss. It

is not alleged that the Oil Company paid for the purchase of the property by Strickland, or that it had obligated itself to pay the taxes, or plaintiff's mortgage, or that it had purchased the tax certificate, or furnished the money to Hutchins for its purchase, or for the purchase of the tax deed.

On this state of the record, we cannot hold that the chancellor was in error in granting the motions of the several defendants to dismiss the bill.

Affirmed.

BUFORD, C. J., THOMAS and SEBRING, JJ., concur.